## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

ABDOULAYE TOURE,

               Plaintiff,

          -against-

AIR FRANCE, THE CITY OF NEW YORK,
PORT AUTHORITY OF NEW YORK AND NEW
JERSEY, AND PORT AUTHORITY OF NEW YORK
AND NEW JERSEY POLICE DEPARTMENT,
PORT AUTHORITY OF NEW YORK AND NEW JERSEY
POLICE OFFICER CHELSEA CASSINO, and
PORT AUTHORITY POLICE OFFICERS
"JOHN/JANE DOE" #1 THROUGH #5,

               Defendants.

----------------------------------------------------------------X

Civil Action No. 21-1645

**JURY TRIAL DEMANDED**

## **VERIFIED COMPLAINT**

    Plaintiff Abdoulaye Toure, by his attorneys, hereby alleges as follows for his verified complaint against defendants Air France, the Port Authority of New York and Jersey, and Port Authority Police Officer Chelsea Cassino and Port Authority Police Officer's "John Doe" #1 through #10 ("the Defendants"):

## **NATURE OF THE ACTION**

    1.    This is a civil rights action brought by Mr. Toure to seek relief for the Defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and by the Eighth, Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff seeks compensatory and punitive damages, and such other relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983, and by the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff further asserts 42 U.S.C. § 1983 conspiracy claims, and the Court's pendant jurisdiction to hear common law claims pursuant to 28 U.S.C. § 1367.

3.      This Court has jurisdiction under 28 U.S.C. § 1331 and § 1343, this being an action to redress violations of Plaintiff's constitutional rights.

4.      Venue in this district is proper under 28 U.S.C. § 1391(b), and (c), in that the events giving rise to Plaintiff's claim occurred within the boundaries of the Southern District of New York.

## JURY TRIAL DEMANDED

5.      Plaintiff demands a jury trial on each and every claim pursuant to Federal Rule of Civil Procedure 38.

## THE PARTIES

6.      Plaintiff Abdoulaye Toure is a United States citizen, over the age of 18 years, and presently resides in Atlanta, Georgia.

7.      Defendant Air France is an international airline that employs and/or contracts and retains agents, volunteers, servants, and members. On information and belief, Defendant Air France owned, operated, and supervised the premises of its facilities located at John F. Kennedy Airport ("JFK Airport").

8.      Defendant City of New York ("the City") is a municipal corporation duly incorporated and authorized under the laws of the State of New York pursuant to § 431 of its Charter. The City of New York is authorized under the laws of the State of New York to maintain

a Police Department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of its facilities and the employment of its police officers.

9.      At all relevant times, Defendants the City of New York and Port Authority of New York and New Jersey ("PANYNJ") hired, employed, supervised and controlled their employees, personnel and/or staff.

10.     Defendant PAPD Police Officers "John Doe" #1 through #10 and PAPD Police Officer Chelsea Cassino (collectively the "Individual Defendants") were at all times relevant herein, duly appointed and acting officers, servants, employees, and agents of the Port Authority of New York and New Jersey Police Department ("PAPD"). At all relevant times, they acted under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the PAPD in the course and scope of their duties and functions as PAPD employees, officers, servants, and agents, and were acting for, and on behalf of, and with the power and authority vested in them by the PAPD and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of his duties. They are sued in their individual and in official capacities.

11.     Defendants are sued in their individual and in their official capacities. Relief is sought against each and all Defendants as well as their agents, assistants, successor, employees and persons acting in concert or cooperation with them or at their direction or under their supervision.

## ALLEGATIONS OF FACT

12.     On or around November 12, 2019 Abdoulaye Toure, a Black male, was standing by the Air France Counter at John F. Kennedy Airport ("JFK Airport") in New York City, New York.  At that time, Mr. Toure was traveling on business from New York to Conakry, Guinea through Paris France, in his role as a security advisor.

13.     Mr. Toure had arranged a scheduled meeting to discuss the contract and sell of a particular style of stun gun to the Police Department of Guinea. The bulk order of the sale was anticipated to net his company a significant profit.

14.     Mr. Toure checked into his flight, AF0011, departing at 21:30, and when checking his luggage, alerted Air France employees that he was transporting a stun gun in his check luggage. When speaking to the Air France Employee, Mr. Toure explained the purpose of the stun gun, and showed documentation from the United States Department of Transportation and from the United States Bureau of Alcohol, Tobacco and Firearms, which indicated that such transportation was allowed and lawful.

15.     Rather than consult TSA regulations and/or Air France's published policy, which allows stun guns in cargo-hold-checked-baggage, the Air France employees called the Port Authority Police Department on Mr. Toure.

16.     When the Port Authority Police Officers Chelsea Cassino, along with Port Authority Police Officers John Doe #1 through #5 arrived at the terminal, they placed Mr. Toure under arrest due to the allegations made by the Air France employees.

17.     The PAPD officers used discourteous language and behavior toward the claimant while he was being arrested. When Plaintiff attempted to explain the situation to the PAPD Officers the Officers told him that the law didn't matter and that they were the law. Plaintiff suffered

multiple assaults and batteries committed to his person including but not limited to being placed in handcuffs.

18.     As a direct result of the careless, irresponsible and unreasonable conduct by the Air France Employees, Mr. Toure was arrested and held in custody for over 16 hours; was forced to retain and pay a criminal attorney; missed his flight to Guinea; and had his demonstration stun gun seized by the police, leading to the loss of a significant commercial sale; and suffered additional physical and emotional injuries.

19.     Mr. Toure filed a Notice of Claim ("NOC") for the incident on February 6, 2020.

20.     At all times relevant herein, the Defendants acted intentionally, willfully, maliciously, negligently, and with reckless disregard for and deliberate indifference to Plaintiff's clearly established constitutional rights to be free from unlawful search and seizure, and Plaintiff's physical and mental well-being by unlawfully restraining, seizing, and assaulting Plaintiff.

21.     The actions of the Individual Defendants, as set forth herein, were the result of the failure of the PAPD to properly train, supervise and discipline its officers, including the Individual Defendants. This failure to train, supervise and discipline is a consequence of the deliberate policies and practices of Defendant New York City, the Port Authority of New York and New Jersey, and the PAPD. These policies and practices are in part responsible for the unconstitutional, wrongful, deliberate, malicious, negligent, careless and intentional actions of the Individual Defendants.

22.     At all relevant times herein, Defendant the Port Authority of New York and New Jersey, acting through its PAPD, developed, implemented, enforced, encouraged and sanctioned *de facto* policies, practices, and/or customs exhibiting deliberate indifference to Plaintiff's constitutional rights which caused the violation of his rights.

23.     Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

24.     The constitutional abuses and violations by Defendant New York City, the Port Authority of New York and New Jersey, through the actions of the PAPD and the Individual Defendant officers, were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant New York City, including the failure: (a) to adequately supervise and train its officers and agents, including the Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including Defendants; and (c) to adequately and properly investigate citizen complaints of police misconduct, and instead, acts of misconduct were tolerated by the City of New York, the State of New York and the Port Authority of New York and New Jersey.

25.     Upon information and belief, Defendant Port Authority of New York and New Jersey has, acting through its PAPD, developed, implemented, enforced, encouraged and sanctioned a *de facto* policy, practice, and/or custom of unlawfully interfering with and/or using excessive force against individuals.

26.     Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

27.     Defendants acted with deliberate indifference to the constitutional rights of Plaintiff. As a direct and proximate result of the acts as stated herein by each of the Defendants,

Plaintiff's constitutional rights have been violated which has caused him to suffer physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

28.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from continuing their unlawful policies, practices, and/or customs which have directly and proximately caused such constitutional abuses.

29.     All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the Port Authority of New York and New Jersey, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: detaining innocent persons without cause in order to meet "productivity goals," or arrest quotas; detaining individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting those individuals.

30.     The Defendant Port Authority of New York and New Jersey's knowledge of prior incidents in which they were involved in unprivileged stops, detentions, searches, arrests and prosecutions was such that the Defendant City of New York and Defendant Port Authority was on notice that, barring additional training, discipline and/or supervision, the Individual Defendants would violate other individuals' constitutional rights going forward, which they did to Plaintiff here. The prior incidents include, but are not limited to, the number and substance of other misconduct allegations made to and investigated by precinct-level, borough-level, department-level and municipal-level bodies, including but not limited to CCRB, IAB, borough/precinct/division/unit integrity officers, and more, and the findings made and actions taken by the same relative to these Individual Defendants. In addition, the Defendant City's

knowledge that prior incidents reasonably required additional training, supervision and/or discipline for these Individual Officers is demonstrated by the number, substance and resolution of misconduct allegations made against these Individual Defendants in pre-litigation notices of claim and litigation pleadings. The prior incidents also include instances where allegations of unlawful stops, detention, searches and more were successfully litigated against the Individual Defendants in the context of criminal prosecutions to suppress evidence or statements.[1]

31.     To the extent the Defendant City of New York and Defendant Port Authority purports to have a policy designed to adequately observe patterns of individual-officer misconduct to identify when training, discipline and/or supervision of a particular officer is required to protect the general public and/or its individual members from future rights violations by that officer, Plaintiff alleges that the policy does not operate to adequately identify and address patterns as it purports to do. Among other reasons, this is because the method by which the City allegedly implements the policy is paper-based, fails to centralize misconduct allegations made to various investigative bodies in any one place, fails to merge the dispositions of misconduct-allegation investigations-or even the most basic factual allegations relating to the complaint-onto individual investigative bodies' indices designed for that purpose, and more. In summary, the City purports to have a reasonable and sincere policy meant to allow it as a modern managerial authority to

---

[1] See, e.g., Using Data from Lawsuits and Legal Claims Involving NYPD to Improve Policing, OIG NYPD Report, April 2015; NYPD Response, June 20, 2015, available at https://www1.nyc.gov/site/doi/oignypd/reports.page (last accessed Feb. 22, 2020); see 2019 Assessment of Litigation Data Involving NYPD, OIG NYPD Report, July 29, 2019, available at https://www1.nyc.gov/assets/doi/reports/pdf/2019/Apr/13LitData_pressrelease_report_43019.pdf (last accessed Feb. 22, 2020).

meaningfully track troublesome patterns of risk in its employees, but the policy does not come close to sincerely permitting the City to achieve that goal.[2]

32.     The City's and Port Authority's inefficient, insincere and therefore deliberately indifferent approach to detecting its employees' pattern-based risks of future commissions of constitutional-rights violations is further demonstrated by its failure to perform any investigation or by its performance of an insufficient investigation into officer-misconduct allegations when made. Even assuming arguendo that the City had a way to meaningfully track the substance, frequency and relative similarities and merit of misconduct allegations leveled against a particular officer during the history of his/her municipal employment, the Port Authority and City Defendant so often fails to perform any investigation or any sufficient investigation into officer-misconduct allegations. The same City Defendant that purports to have a policy of looking for misconduct patterns evincing risks that its personnel will commit constitutional violations against people going forward lacks a regular mechanism through which to verify that a misconduct allegation-whether made by a member of the service or a member of the public-was investigated at all or with a modicum of seriousness by a responsible government actor at unit, division, precinct, borough, agency, municipal or other level. Accordingly, even if the City has a more systematic misconduct-pattern-detection policy or system in place, which Plaintiff alleges the City does not, the hypothetical policy or system would in practice be inadequate without the raw material (i.e.,

---

[2] See, e.g., Addressing Inefficiencies in NYPD's Handling of Complaints, OIG NYPD Report, Feb. 7, 2017 (last accessed Feb. 22, 2020); NYPD Response, May 8, 2017, available at https://www1.nyc.gov/assets/oignypd/downloads/pdf/Reports/OGReport.pdf (last accessed Feb. 22, 2020).

meaningful individual misconduct allegation investigations) necessary for such pattern-detection efforts to work.[3]

33.     Another way in which the City's officer-misconduct-complaint investigation practices exhibit deliberate indifference to the detection of patterns requiring managerial response to protect against future rights violations because even agency-specific misconduct-allegation indices fail to offer any clear way to quickly synthesize a picture of a subject officer's historical patterns of misconduct allegations, related investigative findings and municipal action. For example, CCRB and IAB and lower-level integrity-control misconduct-allegation and investigative records are maintained separately from one another and not merged into one central document. As another example, in many instances an integrity-control entity's records specific to that entity fails to serve as meaningful quick-reference records for anything because the substantive detail of a misconduct complaint, whether it was ever investigated, its ultimate resolution, and more are never centralized anywhere. Setting aside the intra-entity inefficiency occasioned by this approach, this approach also assured inter-agency inefficiency in detecting officer-specific misconduct-allegation and misconduct-investigation patterns as they may be demonstrated through a complete review of various integrity-control entities' work.

34.     The City's officer-misconduct-complaint investigation practices further fail to fully address pattern-derived obvious risks that an officer will violate other individuals' rights in the future because relevant municipal policy contemplates only that officers accused of independently initiated and direct misconduct should be treated as having the potential for demonstrating patterns

---

[3] See, e.g., Addressing Inefficiencies in NYPD's Handling of Complaints, OIG NYPD Report, Feb. 7, 2017 (last accessed Feb. 22, 2020).

of misconduct rising to the level of constitutional risk. This ignores that supervisory officers who are implicated in issuing unconstitutional directions to subordinates or who are implicated in incorrectly approving subordinates' unconstitutional arrests or other actions can demonstrate equivalent pattern-derived constitutional risks as is true for patterns that are noted in a direct officer offender. The same is true that subordinate officers who are regularly implicated in failing to intervene to stop a colleague's or supervisor's unconstitutional actions can pose a problematic pattern-derived risk of constitutional damage to the public. Yet the City's misconduct-allegation investigation policy does not squarely address officers' involvement in supervisory or failure-to-intervene rights violations with the same equivalence as direct violations despite the fact that a reasonable managerial authority would treat them, when tracked, as able to similarly establish notice of future constitutional-violation risks.

35.     The City's unconstitutional customs and policies which may be inferred from repeated occurrences of similar wrongful conduct as discussed above is also documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York, New York State courts, and Notices of Claims filed with the Comptroller's Office. The City is on clear notice that its policies and customs have caused and continue to cause chronic constitutional violations from (1) the number of Civil Rights Lawsuits filed against it and its law enforcement officers (which, on information and belief, the City does not adequately track in order to identify problem precincts, divisions, units and/or problem officers), (2) the number of Notices of Claim ("NOC") filed against the City and its law enforcement officers and the City's inadequate responses to those NOCs, (3) the number of Complaints filed with the Civil Complaint Review Board ("CCRB") against the City's law enforcement officers, (4) City Council hearings, (5) newspaper reports, (6) criminal cases resulting in declined prosecutions and dismissals, (7) judicial

rulings suppressing evidence and finding officers incredible as a matter of law; and more. Taken together, all of these red flags demonstrate that a troubling number of PAPD officers unlawfully stop, search and seize New Yorkers without reasonable suspicion or probable cause, bring charges against New Yorkers with no legal basis, perjure themselves in charging instruments and through testimony, use excessive force against individuals, and fail to intervene in and report the obviously illegal actions of their fellow officers, *inter alia*.

36.     Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights. Despite such notice, Defendant the City of New York has failed to take corrective action. This failure caused Individual Defendants in this case to violate Plaintiff's constitutional rights. For decades, the City has been on notice that certain precincts and certain police officers are disproportionately responsible for civil rights lawsuit liability. Nonetheless, the City has failed to take action to track such information in order to hold precincts or officers accountable through disciplinary action or programs of reform. See, e.g., *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 lawsuits is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").

37.     The City's failure to compile and employ Civil Rights Lawsuit data in this manner is surprising when one considers the trove of data that this represents. For example, between 2009 and 2014, the City paid an average of $ 33,875 per case to resolve well over

10,000 cases.[4] Similarly, the City Comptroller has reported that the City of New York's

payments to resolve allegations of misconduct by members of the NYPD has risen from $ 99

million to $ 217 million in between 2005 and 2014. While such numbers relate to the NYPD,

they reflect that the City had actual knowledge that its police department was routinely engaging

in unconstitutional and unlawful conduct.[5]

      38.    By failing to keep track of crucial data, which could save lives as well as taxpayer

money, the City has created a system in which lawsuits are treated as unrelated to their potential

deterrent effect.

      39.    The City is also on notice that it employs policies and practices which are presently

insufficient to identify law enforcement's chronic violations of individuals' civil rights because

recent Civil Rights Lawsuits and Criminal Prosecutions amply document systemic problems which

the City resists addressing, as evidenced by its opposition to reporting protocols and officer

recidivism analyses. By way of example:

a.    In Schoolcraft v. City of New York, 103 F. Supp. 3d 465 (S.D.N. Y. 2015), the Court found
that evidence showed an issue of fact as to whether the City had a custom of retaliation against
whistle blowers. Among the record evidence was expert witness testimony about a "blue wall
of silence," which is a "police culture that prizes intense loyalty, unity and solidarity among
police officers to the extent that any officer reporting the wrongdoing of another officer would
be in violation of the code and subject to retaliation." In addition, IAB-run focus groups had
revealed that "physical fear surfaced several times [in participants] during the discussion on
reporting corruption."

b.    In Colon v. City of New York, No. 09 Civ. 0008 (JBW), 2009 WL 4263362, at *2 (E.D.N.Y.
Nov. 25, 2009), the Court denied the *City*'s motion to dismiss the civil rights plaintiff's Monell

---

[4] See Caroline Bankoff, The City Has Paid Almost Half a Billion Dollars in NYPD-Related Settlements
Over the Past 5 Years, Oct. 12, 2014, available at: https://nymag.com/intelligencer/2014/10/428-million-
in-nypd-related-settlements-paid.html (last accessed Feb. 22, 2020).

[5] See Office of the Comptroller, Annual Claims Report, August 2019, available at
https://comptroller.nyc.gov/reports/annual-claims-report/ (last accessed Feb. 22, 2020).

claim against it for insufficient pleading, finding that: Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

c.   In People v. Arbeenv. Index No. 6314-2008 (N.Y. Sup. Ct., Kings County), former undercover NYPD narcotics officer Steve Anderson testified about the frequency with which he observed a law enforcement officer planting narcotics on a suspect in order to make an arrest that would help the officer meet his or her monthly quota of arrests. In order to achieve this, according to Anderson, an officer would carry a stash of narcotics to plant on innocent civilians, a practice that he called "attaching bodies." According to Anderson, "It was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators. Seeing it so much, it's almost like you have no emotion with it. The mentality was that they attach bodies to it, they're going to be out of jail tomorrow anyway, nothing is going to happen to them anyway. That kind of came to me and I accepted it being around so long, and being an undercover."[6] In response to the testimony, the presiding judge, New York Supreme Court Justice Gustin Reichbach stated, "Having been a judge for 20 years, I thought I was not naive regarding the reality of narcotics enforcement." But even the Court was shocked, not only by the seeming pervasive scope of the misconduct, but even more distressingly by the seeming casualness by which such conduct is employed.

d.   In People v. Eiseman. Index No. 2999-2010 (N.Y. Sup. Ct., New York County), NYPD Sergeant William Eiseman pled guilty to perjury and falsifying police records, admitting to faking a marijuana case against one man and cocaine-related charges against another - and training subordinate officers to falsify paperwork to sidestep legal safeguards. See, e.g., NYPD Sgt. William Eiseman Pleads Guilty to Lying Under Oath in Plea Deal, New York Daily News, June 27, 2011, available at http://www.nydailynews.com/news/crime/nypd-sgt-william-eiseman-pleads-guilty-lying-oath-plea-deal-article-1.129288 (last accessed Sept. 3, 2020).

e.   In or around 2007, the United States Attorney's Office investigated the 109th precinct of the NYPD for "planting drugs on suspects and stealing cash during gambling raids." The 109th precinct is believed to be involved in a practice known as "flaking" wherein police officers plant drugs on suspects in order to bring legitimacy to the arrest. According to the Assistant

---

[6] See, e.g., John Marzulli, We Fabricated Drug Charges Against Innocent People to Meet Arrest Quotas. Former Detective Testifies, Oct. 13,2011, at http://www.nydailynews.com/crime/fabricated-drug-charges-innocent-people-meet-arrest-quotas-detective-testifies-article-1.963021 (last accessed Oct. 21, 2020); Jim Dwyer, The Drugs? They Came From The Police, Oct. 13,2011, at https://www.nytimes.com/2011/10/14/nyregion/those-drugs-they-came-from-the-police.html (last accessed Feb. 22, 2020).

United States Attorney Monica Evans, members of the 109th Precinct "maintained a small stash of drugs in an Altoids tin for this purpose."[7]

f.  In <u>Bryant v. City of New York</u>, Index No. 22011/2007 (N.Y. Sup. Ct., Kings County), a jury found that the NYPD had a policy "regarding the number of arrests officers were to make that violated [the] plaintiffs' constitutional rights and contributed to her arrest."[8]

g.  In <u>MacNamara v. City of New York</u>, No. 04 Civ. 7922 (RJS) (JCF) (S.D.N.Y), Docket No. 542, the Court granted the Plaintiffs' motion to approve a class-wide settlement reached in a case demonstrating evidence that police officers systematically perjured themselves in sworn statements in order to justify the unlawful mass arrests of 1,800 demonstrators during the 2004 Republican National Convention.

h.  In <u>White-Ruiz v. City of New York</u>, *983 F. Supp. 365, 380 (S.D.N.Y. 1997),* the Court stated that it found the Mollen Commission's July 7, 1994 report investigating "Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department" to be "entirely reliable." Among other things, the Mollen Commission found that NYPD "[o]fficers who report misconduct are ostracized and harassed; become targets of complaints and even physical threats; and are made to fear that they will be left alone on the streets in a time of crisis. This draconian enforcement of the code of silence fuels corruption because it makes corrupt cops feel protected an invulnerable."

i.  In <u>Ariza v. City of New York</u>, *No. 93 Civ. 5287 (CPS), 1996 WL 118535,* at *6 (E.D.N.Y. Mar. 7, 1996), the Court denied the defendants' summary judgment motion on the question of whether the City had a custom of retaliation against police corruption whistle blowers, stating that a reasonable jury could plausibly find that the plaintiff's evidence "establishes both a widespread usage and a failure to train in the police department."

40.     These cases are a small drop in the ocean of Civil Rights Cases, Claims, Criminal Prosecutions, and revelations made in these contexts which support that the City of New York has been shown repeatedly to have a culture of unconstitutional customs and practices, specifically a culture of officers lying under oath, falsely swearing out criminal complaints or otherwise falsifying or fabricating evidence, and covering for one's colleagues when they engage in this

---

[7] John Marzulli, <u>Claims of Corruption in Kings Precinct Put Crooked Cop's Sentencing on Hold</u>, N.Y. Daily News, June 20, 2008, available at https://www.nydailynews.com/news/crime/claims-corruption-queens-precinct-put-crooked-sentencing-hold-article-1.296352 (last accessed Feb. 22, 2020).

[8] <u>See also</u> <u>Despite Laws and Lawsuits, Quota-Based Policing Lingers</u>, NPR News, April 4, 2015, https://www.npr.org/2015/04/04/395061810/despite-laws-and-lawsuits-quota-based-policing-lingers (last accessed Feb. 22, 2020).

misconduct, resulting in individuals suffering false arrest, false imprisonment, malicious prosecution, and other constitutional torts.

41.    The City has ratified policies and practices that cause chronic violations of individuals' constitutional rights. The City has been on notice of its unlawful practices through the vast amount of litigation that has been brought in federal and state courts. By failing to take any meaningful corrective steps and choosing to put out fires whenever they break out (which is often), the City has ratified, endorsed, and communicated its acceptance of these policies and customs to the officers it employs. The City's opposition to or refusal to consider adopting more robust data collection, analysis and reporting practices has been longstanding.

42.    Moreover, on information and belief, the City was also aware, prior to the incident, that the Individual Defendants here lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant the City of New York, has retained these officers, and has failed to adequately train and supervise them.

43.    All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

44.    All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and were in violation of 42 U.S.C. § 1983, as well as the rights guaranteed to Plaintiff under the laws of New York state.

45.    The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

46.     The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police and/or correctional officers, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York, the PAPD, under the supervision of their ranking officers.

47.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

48.     As a result of the foregoing, Plaintiff is entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

### FIRST CAUSE OF ACTION

**NEGLIGENCE**
**AS AGAINST AIR FRANCE, THE CITY OF NEW YORK, PORT AUTHORITY OF**
**NEW YORK AND NEW JERSEY**
(New York Common Law)

49.     Plaintiff repeats and re-alleges paragraphs "1" through "48" above as if fully set forth herein.

50.     That the Defendants, herein, their agents, servants and/or employees were negligent in the

(a) hiring and retaining of a person or persons who was/were unfit to serve as custodial, correctional, court, legal, clerical and/or police officers or should have known had negligent, reckless, careless or dangerous propensities and a lack of proper temperament, organization, reliability, responsibility, carefulness and prudence.

(b) in the training and instruction of its custodial, correctional, court, legal, clerical and/or police officers by not exercising care in instructing them as to their deportment, duties, behavior and conduct as employees and representatives of Air France and/or the City of New York and in the training and instruction among other things, on the proper use of their nightsticks, handcuffs, etc. and/or method of arrest, detainment and/or release;

(c) in failing to use such care in the performance of custodial, correctional, court, legal, clerical and/or police officer's duties as a reasonably prudent and careful custodial, correctional, legal, court, clerical or police officer would have used under similar circumstances including but not limited to, improper and negligent use of or carrying out of their duty which a police officer of ordinary procedure would not have done all without any negligence on the part of the claimant contributing thereto.

51.     That by reason of the foregoing, the Plaintiff was caused to be falsely arrested and illegally deprived of his liberty and civil rights; was caused to suffer imprisonment and confinement; was caused to be assaulted and battered by the Defendants, thereby sustaining conscious pain and suffering and incurred legal expenses.

52.     That Mr. Toure in no way provoked or encouraged the tortious conduct by the Defendants, and further that the Defendants' physical contacts with said Plaintiff were not justified by any privilege held by the Defendants or any probable cause or reasonable suspicion of any criminal conduct by said Plaintiff, and said Plaintiff was not engaged in any unlawful activity whatsoever.

53.     That if certain of the individual Defendants did not themselves engage in tortious conduct or arrest Plaintiff, said individual Defendants failed to prevent the arrest and abuse of the said Plaintiff and other tortious conduct by the other Defendants despite having a duty to do so,

said failure to act being either intentional and/or in gross disregard of the civil rights of said Plaintiff.

54.     That the aforesaid acts and/or omissions of the Defendants were pursuant to an agreement and/or conspiracy among them to violate the civil rights of the Plaintiff.

55.     That the aforesaid acts and/or omissions of the individual Defendants caused the Plaintiff social stigma, damage to his reputation, mental anguish and distress, and further that said Plaintiff was caused to be confined and imprisoned as a result of said acts and/or omissions.

56.     That the aforesaid acts and/or omissions of the individual Defendants violated the Plaintiff's civil rights, that are secured by, *inter alia*, the U.S. Constitution and New York state law including, but not limited to: the right to be free from arbitrary and groundless arrest; the right to be free from cruel and unusual punishment and summary punishment; the right to free in his person from unlawful restraints on his movement; the right to not be subjected imprisonment without due process of law and the right to enjoy equal protection of the laws; the right to have all the legal rights enjoyed by Caucasian persons, including the right to be secure in his person and/or property; the right to have persons entrusted with legal authority to act to enforce his civil rights to either act to enforce such rights or be themselves adjudicated as having violated the Plaintiff's civil rights and the right to be free from conspiracies to violate his civil rights by those acting under color of state law.

57.     That as a result of the foregoing, the Plaintiff sustained the injuries and damages hereinbefore alleged.

## SECOND CAUSE OF ACTION

### EXCESSIVE FORCE
### AS AGAINST THE CITY OF NEW YORK, PORT AUTHORITY OF NEW YORK AND NEW JERSEY AND THE INDIVIDUAL DEFENDANTS

### (42. U.S.C. §1983, Fourth and Fourteenth Amendments)

58.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "57" as if more fully set forth at length herein.

59.     By their conduct, as described herein, and acting under color of state law to deprive Plaintiff of his right to be free from excessive force in the course of an arrest as required by the Fourth and Fourteenth Amendments, the individual Defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

60.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CAUSE OF ACTION

### FALSE ARREST
### AS AGAINST AIR FRANCE, THE CITY OF NEW YORK, PORT AUTHORITY OF NEW YORK AND NEW JERSEY, and the PAPD
### (42. U.S.C. §1983, Fourth and Fourteenth Amendments)

61.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "60" as if more fully set forth at length herein.

62.     By their conduct, as described herein, and acting under color of state law to deprive Plaintiff of his right to be free from unreasonable searches and seizures as required by the Fourth and Fourteenth Amendments, Defendants are liable for violation of 42 U.S.C. § 1983 which

prohibits the deprivation under color of state law of rights secured under the United States Constitution.

63.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION

### ASSAULT, BATTERY AND DEPRIVATION OF LIBERTY
### AS AGAINST THE CITY OF NEW YORK AND THE PORT AUTHORITY POLICE DEPARTMENT
(42. U.S.C. §1983, Fifth, Eighth and Fourteenth Amendments)

64.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "63" hereinabove as if more fully set forth at length here in.

65.     The acts of the Individual Defendants, under color of state law, in arresting Plaintiff, including physically assaulting and battering him, were racially motivated, undertaken without lawful justification, taken with deliberate indifference to Plaintiff's rights, and were designed to, and did, cause specific and serious bodily harm, pain and suffering to Plaintiff in violation of his constitutional rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Through these actions, Defendants are liable for violation of 42. U.S.C. §1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

66.     By their conduct, as described herein, Defendants are liable to Plaintiff under 42. U.S.C. §1983 for the violation, under color of state law, of the constitutional right to be free from any deprivation of liberty without due process of law under the Fifth and Fourteenth Amendments to the United States Constitution.

67.     As a consequence of the Individual Defendants' actions, Plaintiff has suffered violations of his due process rights under the Fifth and Fourteenth Amendments. Plaintiff has fear and apprehension that he will, again, be subject to similar unlawful acts by Defendants.

68.     Further, the Individual Defendants failed to intervene in order to prevent their co-defendants from violating the rights of Plaintiff.

69.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff sustained the damages hereinbefore alleged.


### FIFTH CAUSE OF ACTION

**MONELL CLAIM**
**AS AGAINST THE CITY OF NEW YORK, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, AND THE PORT AUTHORITY POLICE DEPARTMENT**

70.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "69" hereinabove as if more fully set forth at length herein.

71.     At all relevant times herein, Defendants New York City, the Port Authority of New York and New Jersey, acting through its PAPD, developed, implemented, enforced, encouraged and sanctioned *de facto* policies, practices, and/or customs exhibiting deliberate indifference to Plaintiff's constitutional rights which caused the violation of such rights.

72.     Despite knowledge of such unlawful *de facto* policies, practices, and/or customs, these supervisory and policy-making officers and officials of the PAPD, the PANYNJ, and the City have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead approve and ratify these policies, practices and/or customs through their

active encouragement of, deliberate indifference to and/or reckless disregard of the effects of said policies, practices and/or customs or the constitutional rights of persons in New York City.

73.     The constitutional abuses and violations by Defendant New York City, through the actions of its Police Department, Department of Correction and all named Defendants, were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by Defendant New York City, including but not limited to the failure: (a) to adequately supervise and train its officers and agents, including Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including Defendants; (c) to adequately screen prospective employees in its hiring process; and (d) to adequately and properly investigate citizen complaints of police misconduct, and instead, acts of misconduct were tolerated by New York City of New York.

74.     New York City is on clear notice that its policies and customs have caused and continue to cause chronic constitutional violations. This notice is evidenced by, *inter alia*, (1) the number of Civil Rights Lawsuits filed against it and its law enforcement officers (which, upon information and belief, the City does not adequately track in order to identify problem precincts and/or problem officers), (2) the number of Notices of Claim ("NOC") filed against the City and its law enforcement officers and the City's inadequate responses to those NOCs, (3) the number of Complaints filed with the Civil Complaint Review Board against the City's law enforcement officers, (4) newspaper reports, (5) criminal cases resulting in biased prosecutions and dismissals. Taken together, all of these red flags demonstrate that a troubling number of officers unlawfully search and seize New York citizens without probable cause, bring charges against New York citizens with no legal basis, perjure themselves in charging instruments and through testimony,

use excessive force against individuals, and fail to intervene in and report the obviously illegal actions of their fellow officers.

75.     Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.

76.     Defendants have acted with deliberate indifference to the constitutional rights of Plaintiff. As a direct and proximate result of the acts as stated herein by each of the Defendants, Plaintiff's constitutional rights have been violated which has caused him to suffer severe physical, mental and emotional injury and pain, in addition to severe mental anguish, suffering, humiliation and embarrassment.

77.     Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from continuing their unlawful policies, practices, and/or customs which have directly and proximately caused such constitutional abuses.

78.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**SIXTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OR EMOTIONAL DURESS**

**(New York Common Law)**

79.     Plaintiff repeats and re-alleges paragraphs "1" through "78" above as if fully set forth herein.

80.     Defendants Air France, PANYNJ, New York City and PAPD acted intentionally and recklessly when they failed to obey established procedures and policies of their respective institutions and falsely arrested the Plaintiff.

81.     Defendants Air France, PANYNJ, New York City, and PAPD false report and arrest of the Plaintiff in plain view of other passengers and while his wife was on the phone listening to the exchange was extreme and outrageous.

82.     Defendants Air France, PANYNJ, New York City, and PAPD intentionally caused physical and emotional harm to the Plaintiff.

83.     Defendants Air France, PANYNJ, New York City, and PAPD allegations and wanton disregard of the policies, procedures and laws was the direct cause of Plaintiff's arrest, public humiliation and harm to his business reputation

81.     As a result of the foregoing, defendants, individually and or collectively, by and through their agents, servants and or employees, intentionally, wantonly, recklessly, carelessly, and or negligently, engaged in extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by decent society thereby inflicting mental and emotional distress upon plaintiff.

82.     As a result of the foregoing, plaintiff has suffered damages.

## SEVENTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OR EMOTIONAL DURESS

#### (New York Common Law)

84. Plaintiff repeats and re-alleges paragraphs "1" through "82" above as if fully set forth herein.

1. Defendants Air France, PANYNJ, New York City and PAPD acted negligently and recklessly when they failed to obey established procedures and policies of their respective institutions and falsely arrested the Plaintiff.

2. Defendants Air France, PANYNJ, New York City, and PAPD negligent actions resulting in the false report and arrest of the Plaintiff in plain view of other passengers and while his wife was on the phone listening to the exchange was extreme and outrageous.

3. Defendants Air France, PANYNJ, New York City, and PAPD negligently caused physical and emotional harm to the Plaintiff.

4. Defendants Air France, PANYNJ, New York City, and PAPD negligent allegations and disregard of the policies, procedures and laws was the direct cause of Plaintiff's arrest, public humiliation and harm to his business reputation

81. As a result of the foregoing, defendants, individually and or collectively, by and through their agents, servants and or employees, intentionally, wantonly, recklessly, carelessly, and or negligently, engaged in extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by decent society thereby inflicting mental and emotional distress upon plaintiff.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiff respectfully requests the following relief:

A. An order entering judgment for Plaintiff against Defendants on each of his claims for relief;

B. Awards to Plaintiff for compensatory damages against all Defendants, jointly and severally, for their violation of the Fourth, Fifth, Eighth and Fourteenth Amendment

rights of Plaintiff, the amount to be determined at jury trial, which Plaintiff respectfully demands pursuant to FRCP 38;

C. Awards to Plaintiff of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to the constitutional rights and welfare of Plaintiff, the amount to be determined at jury trial, which Plaintiff respectfully demands pursuant to FRCP 38;

D. Awards to Plaintiff of nominal damages against Defendants on the basis of the constitutional violations herein alleged in the event that compensatory and/or punitive damages are unavailable on certain claims;

E. Awards to Plaintiff for the costs of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1920 and 1988; and

F. Such further relief as this Court deems just and proper.


DATED:      New York, New York
            March 23, 2021


                              Respectfully submitted,

                              Walter John Thompson, Esq.
                              Thompson Law, P.C.
                              250 West 57th Street, Suite 1632
                              New York, NY 10107
                              (646) 670-1672

                              *Attorney for Plaintiff*

## INDIVIDUAL VERIFICATION

State of Georgia          )
                               ) ss:
County of Dekalb       )

       Abdoulaye Toure, being duly sworn, deposes and says that deponent is the claimant in the within action; that she has read the foregoing Notice of Claim and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

                                               Abdoulaye Toure

Sworn to before me this
_____ day of February 2020

Notary Public

PATRICK K. JENSEN
NOTARY
PUBLIC
CLAYTON COUNTY, GEORGIA

NOTARY COMM. EXPIRES:
October 31st, 2023

## CERTIFICATE OF CONFORMITY

State of Georgia

On the _____ day of _Feb_ in the year 20_20_ before me, the undersigned, personally appeared _Abdoulaye Toure_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Signature of Notary

PATRICK K. JENSEN
NOTARY
PUBLIC
CLAYTON COUNTY, GEORGIA

NOTARY COMM. EXPIRES:
October 31st, 2023